## CRAWFORD *vs.* MANSON.

A father desired to give money to his married daughter, and offered to do so, but she declined, saying she preferred to have land. Finally, when she was not present, he left with her husband, then a prosperous merchant, $1,900, whether as an immediate gift to her, or as a temporary loan to the husband for use in his business until the father could find a suitable opportunity to invest it in land for the daughter, is disputed. The husband reported it to his wife as a gift from her father, and, with her consent, used it in his business. About one year thereafter, a farm was purchased (the husband co-operating with a son of the father in the transaction) at the price of $3,500, part cash and part on time, and a bond from the vendor to make titles to the father on payment of the purchase money in full was taken. The daughter with her husband took possession of the premises with the father's consent,

and is still in possession. The husband paid $1,700 of the purchase money, and her father paid the balance, $1,800. In the meantime, a child was born to the daughter, and her husband failed in business and became insolvent. The father, by deed of gift, conveyed the premises to one of his sons, in trust for the daughter during her life, with remainder to her child or children or their descendants, if any living at her death, and. if none, then to his other children. Of this deed and its provisions the daughter was probably not aware until shortly before filing the present .bill, which as finally shaped by an amendment, is a bill to set aside the deed made to the trustee by her father, and to compel him to convey the whole premises to her in fee simple.

*Held,* that the only material question of fact is, whether the money left by the father with the husband of the daughter, was an executed gift to her, or whether it was a temporary loan to the husband.

*Held* further, that if the money was an executed gift to the daughter, the payment by her through her husband of $1,700 of the purchase money, worked a resulting trust in her favor to the extent of seventeen undivided 35ths of the premises, and she is entitled to have the trust deed set aside and cancelled, and then to have, at her election, either a quit-claim conveyance from her father in fee simple, covering 17–35ths of the premises, so as to be a tenant in common with him, he holding 18–35ths, or to leave him sole owner and recover of him $1,700, with a lien (by decree) upon the premises for its payment.

*Held* further, that if the money was not an executed gift to the daughter but a temporary loan to the husband, the jury should find for the defendants below, and the bill be thereupon dismissed.

November 21, 1888.

Equity.   Gifts.   Loans.   Trusts.   Deeds.   Before Judge RICHARD H. CLARK.   Clayton superior court. March term, 1888.

Reported in the decision.

HALL & HAMMOND and W. L. WATTERSON, for plaintiff in error. .

HILLYER & BRO. and TIGNER & WRIGHT, *contra.*

BLECKLEY, Chief Justice.

Mrs. Manson filed her bill against her father, her brothers, her sister and her own minor child. Her complaint is, that there is a farm of which she, with her husband, has possession, and that the title ought to be in her, but by a conveyance from her father is in one of her brothers as trustee for her during her life, the premises to be used for her occupation and benefit and the support and maintenance of herself and children, free from the debts, etc. of her husband, and at her death to become the property of her child or children or descendants of such child or children; and if she should die without such child or children or descendants, then to be equally divided between her father's other children and their descendants. She prays that this trust deed be set aside, and that her father be required to convey the premises to her in fee simple. The jury found in her favor, and the court decreed accordingly, denying a new trial, which was moved for by the defendants below on numerous grounds; amongst others, the general grounds that the verdict is contrary to law and evidence.

A study of the record leaves us in no doubt that upon these general grounds a new trial should have been granted. According to the evidence, there never was any executed gift of the land itself to Mrs. Manson; and of the money that paid for it, all except $1,700 was undoubtedly her father's. The only room for any rational controversy whatever is whether the $1,700 did not also belong to him. That much was paid to the vendor of the land by Mr. Manson, and all parties have treated it as part of the larger sum of $1,900 left with him by Crawford, the father of Mrs. Manson, about one year before the land was purchased. There is irreconcilable

conflict in the testimony as to whether that sum was left as an immediate gift to Mrs. Manson, or as a loan to Manson for temporary use in his business, until the father could meet with a suitable opportunity to invest it in land for his daughter. It is certain that such an opportunity was sought for, and that when it was presented, Manson co-operated with the father (the latter represented by one of his sons) in making the purchase, and that he then and afterwards advanced $1,700 of the purchase money. Equally certain is it that the bond for titles was not taken to Mrs. Manson, but to her father, and that the deed afterwards executed by the vendor was made in the same way. The writings are all consistent with title to the land in the father, and inconsistent with any executed gift of the land itself to the daughter. Her possession had lasted, when the conveyance to him was made, only three or four years, and when the bill was filed, only about six years. When the farm was purchased, he doubtless intended to give it to her after it was paid for. But before payment was made in full and he acquired the legal title, a great change had occurred. Her husband, formerly a prosperous merchant, had failed in business and become totally insolvent. This was enough to work a rational change in the intentions of the father, and stands, we think, for a good and sufficient reason why he did not carry out his original design. There is absolutely no evidence in the record of any influence exerted upon him by his other children to bring about the state of mind under which he finally acted. But suppose they did influence him, why should he be compelled, against his present will, to make, or recognize as made, a gift which he once contemplated but never executed ? Surely a father cannot be coerced by a court of equity to exercise his bounty in favor of a daughter, because he has

been induced, contrary to his former intentions, not to do so, by the interposition of his other children. Though aged, he is still alive, and of sound mind. He still, as plainly appears from this record, has power of will—power to give or withhold. And if, for reasons satisfactory to himself, he elects not to give, who shall constrain him? If the whole purchase money paid for the land was his own, he had a right, with or without his daughter's consent, to convey, as he finally did, to his son in trust; but if some of the money was hers, advanced by her through her husband, to that extent a trust in the land resulted by operation of law for her benefit, and the father had no right to convey the whole premises without her consent. We have indicated fully in the head-note the consequences legally incident to the yea or nay of the fact touching her alleged ownership of the money. Our ruling, as there announced, serves not only to dispose of the present writ of error, but to govern the future conduct of the case, and shape the final outcome of the litigation. It is needless, therefore, to deal specifically with the minor grounds of the motion for a new trial.

Judgment reversed.